A89A0380. NORTHSIDE ENVIRONMENTAL SERVICES, INC.
v. NATIONAL BANK OF GEORGIA.
(381 SE2d 536)

DEEN, Presiding Judge.

In approximately March of 1986, Mrs. Sherry Mashburn was hired as a bookkeeper by appellant Northside Environmental Services, Inc. (Northside), a landscaping contractor. Tony Alexander was president of Northside and the only person authorized to approve or sign checks drawn on either its operating account with Heritage Bank (Heritage) or its payroll account, also with Heritage. Through a clever manipulation of the computer (actually, a "power outage"), Mrs. Mashburn (who was, according to the record, an experienced embezzler) destroyed the firm's computer-stored general ledger, with the result that checks had to be prepared manually, rather than by computer generation, until such time as the general ledger could be reconstructed and reprogrammed into the computer — a time-consuming process.

The record indicates that subsequent to this incident Mrs. Mashburn prepared a number of unauthorized checks, either by forging Alexander's signature or by altering the name of the payee on an authentically signed check. On June 6, 1986, while Alexander was confined to the hospital, Mrs. Mashburn brought to him for his signature a typewritten check drawn on Northside's operating account and payable to the firm's payroll account. She took the signed check to her office, where she "lifted" the typed name of the payee (Northside's payroll account) and typed in the name of her husband. On June 11 she presented the check to appellee National Bank of Georgia (NBG), where she and her husband had a joint checking account in which they routinely kept a fairly high balance. She then withdrew $12,000 in cash from this account.

On June 13, 1986, Heritage Bank notified Northside that its payroll account contained insufficient funds to meet that week's payroll, and Northside immediately requested that Heritage issue a "stop payment" order on the $12,000 check which supposedly had been deposited in the payroll account. Northside then attempted to reach Mrs. Mashburn at home but instead reached her husband, who told them that she was ill. He professed surprise at the information concerning the check in question, and on June 15 he notified Alexander (who had been discharged from the hospital) that he had found $12,000 in cash hidden in his home and that he supposed it was the

missing money taken by his wife, whose illness, he said, was mental or emotional. Meanwhile, Heritage, pursuant to the "stop payment" order, had refused to honor the check and had returned it to Northside with the notation, "Refer to maker."

On June 16 Mr. Mashburn and Alexander took the cash to Heritage Bank, purchased a cashier's check for $12,000, and deposited it into Northside's payroll account. Mashburn shortly thereafter found an additional $3,500 in cash, which he turned over to Northside; subsequent investigation revealed that Mrs. Mashburn had embezzled a total of approximately $35,000—$40,000, including the amounts of $12,000 and $3,500 which Mr. Mashburn had returned to Northside.

NBG brought an action against Northside to recover the $12,000. Northside counterclaimed for legal expenses, and both sides moved for summary judgment. The motions were denied, but NBG renewed its motion after this court decided *Northbrook Property &c. Ins. Co. v. C & S Nat. Bank*, 184 Ga. App. 326 (361 SE2d 531), in September of 1987. The Fulton County State Court granted NBG's renewed motion and also ruled against Northside on its counterclaim. Northside appeals, enumerating as error (1) the denial of its motion for summary judgment; (2) the award of summary judgment to NBG on either of two bases: (a) unjust enrichment of Northside and (b) NBG's alleged failure to prove that in paying the check it had acted in conformity with reasonable banking practices; and (3) the award of prejudgment interest to NBG from June 16, 1986, to date of judgment. *Held*:

1. First addressing appellant's third assignment of error, we note that appellee has conceded that, on the basis of OCGA § 7-4-14, prejudgment interest (if such is appropriate at all) should in the instant case have been computed not from June 16, 1986, but from September 9, 1986, the date on which appellee demanded that appellant repay the $12,000. We further note that, under OCGA § 7-4-15, prejudgment interest on the liquidated sum of $12,000 was properly awarded; only the date on which it began to accrue was erroneous. The portion of the judgment requiring that interest be paid for the period between June 16, 1986, and September 9, 1986, must therefore be amended by the trial court.

2. We agree with appellee that *Northbrook*, supra, is controlling in the fact situation of the instant case. We held in *Northbrook*, at 327, that "a loss from the activities of a faithless employee must be borne by the employer rather than the . . . bank . . . 'The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder. . . . [Uniform Commercial Code § 3-405, Official Comment.]' Only bad faith by a bank prevents [the employer's] invoking the code section to defeat a claim." Here, as in *Northbrook*, we find no indicia of bad

faith on the part of the bank, appellee NBG. We find no merit in appellant's remaining enumerations.

*Judgment affirmed in part and reversed in part and case remanded for amendment. Birdsong and Benham, JJ., concur.*

DECIDED APRIL 3, 1989 —
REHEARING DENIED APRIL 17, 1989 —

*Jay E. Loeb*, for appellant.
*Schwall, Ruff & Goodman, Emory A. Schwall, Lee S. Alexander*, for appellee.